JEANNE A

SEP 28 2018

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

**NOT FOR PUBLICATION**

| |
|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY |
| In Re: |
| Soyong Suh, |
| Debtor. |

Case No.:    17-17221-ABA

Chapter:    13

Judge:    Andrew B. Altenburg, Jr.

## MEMORANDUM DECISION

Debtor Soyong Suh seeks disallowance of the City of Philadelphia's $125,000 indemnification claim against her arising from a slip and fall case. The parties disagree whether the claim arose prepetition or postpetition and, if prepetition, whether this court should abstain from deciding whether Mrs. Suh and her husband, Charles Suh, are liable in indemnity to the City of Philadelphia. Mrs. Suh also raises issues of stay violation and estoppel as reasons to wholly disallow the claim. After a hearing, several submissions by the parties, and agreement that the court would decide the matter on the papers, the matter is ripe for adjudication. The court finds that the City holds a prepetition claim and denies Mrs. Suh's motion to disallow the claim. The court will permissively abstain from determining the claim's validity and/or amount.

## JURISDICTION AND VENUE

Claim allowance is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

On October 14, 2011, Darlene Swint-Pinder (the "Plaintiff") allegedly slipped and fell over a sidewalk crack in front of 2149 Federal Street, Philadelphia, property at the time owned by Mr. and Mrs. Suh. *See* Doc. No. 81, ex. B.[1] On October 14, 2013, she sued the Suhs and the City of Philadelphia (the "City") in the Court of Common Pleas, Philadelphia County, for her injuries, seeking $50,000 or less, plus interest, costs and disbursements, attorneys' fees, and delay damages. Ex. G.

---

[1] Unless otherwise indicated, all further references to exhibits shall be to those attached to Doc. No. 81.

The City in its answer to the complaint asserted defenses under the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 *et seq.*, and argued that the Plaintiff's claim was barred for failing to provide the City with statutory notice under 42 Pa. C.S.A. § 5522 *et seq.* Ex. P. (During discovery, it realized that the Plaintiff had provided notice on January 24, 2012. Doc. No. 81-1, ¶ 10; ex. D.) The City also asserted a cross claim against the Suhs, alleging that any injuries and damages suffered by the Plaintiff were caused solely by the negligence and/or carelessness of the Suhs, and that if the City were held liable to the Plaintiff, then the Suhs would be liable to the City by way of contribution and/or indemnity. Ex. P.

The Suhs filed an answer with new matter and crossclaim through their attorney, Jay L. Edelstein, on July 22, 2014. *See* ex. G (state court docket). On July 31, 2014, jury trial was "perfected." *Id.* On August 11, 2014, the Suhs filed a reply to the City's crossclaim. *Id.*

On March 3, 2015, the parties participated in compulsory arbitration where the panel found in favor of the defendants. *Id.* The Plaintiff appealed this result. *Id.* The case was then listed in the "trial ready pool" on March 26, 2015. *Id.* The Plaintiff underwent staged bilateral knee replacement surgery on April 6, 2015. Ex. I. [2]

On November 5, 2015, attorneys Kelly A. Trewella and Emeka Igwe entered their appearance on behalf of the Suhs and Mr. Edelstein withdrew. Ex. G. A settlement conference was completed on November 16, 2015. *Id.* On November 30, 2015, the Suhs filed a Motion for Summary Judgment. *Id.* The court denied that motion on January 7, 2016 and re-listed the case as trial ready. *Id.*

By letter dated February 18, 2016, the Plaintiff's doctor opined that the accident necessitated the Plaintiff's knee surgery, a conclusion the City accepted. *Id.* In response, instead of going to trial, the City and the Plaintiff agreed to take the case to a binding $50,000-$150,000 high-low arbitration. Doc. No. 81-1, ¶ 12. The Suhs' attorney was notified of this by copy of the Plaintiff's March 3, 2016 letter so advising the court. Ex. J.[3] Accordingly, the court removed the case from the trial pool and stated "This case may be restored to the trial list only upon written order of the team/program leader. This relief shall be requested by formal motion." Ex. G.

On or about April 10, 2017, the City received a packet of the Plaintiff's unreimbursed medical bills totaling $110,605. Doc. No. 81-1, ¶ 16; ex. K. Also on April 10th, Mrs. Suh filed the instant chapter 13 bankruptcy case. Sometime between April 10th and April 17th, the City agreed to settle the Swint-Pinder case for $125,000, as on April 17, 2017, it sent a letter to counsel for the Plaintiff and the Suhs confirming the terms of the settlement and attaching a draft release to be signed by the Plaintiff. Ex. L. The letter advised that "Settlements take sixty to ninety days to process once the City of Philadelphia has received an executed release, complete with date of birth and social security number, as well as an Order to Settle, Discontinue, and End, and a W-9 with tax identification number." *Id.* Thus the settlement was not final at this time, as it required the Plaintiff to take certain steps before the City would issue payment.

---

[2] The date of the surgery is hearsay but was not a disputed fact between the parties.

[3] The letter only advised of the binding arbitration, not the high-low values.

In this case on May 9, 2017, Mrs. Suh filed a motion to hold the City in contempt for failing to comply with the terms of a Consent Order entered in a bankruptcy case filed by her in 2008, Bankr. No. 08-34197-JHW. Mrs. Suh had also filed a chapter 13 bankruptcy case on November 14, 2011, which was dismissed August 29, 2013 (the "2011 Bankruptcy Case"), Bankr. No. 11-42851-JHW. On May 15, 2017, the City filed a proof of claim in this case in connection with a municipal tax claim of $9,230 on property the Suhs own located at 2401 N. 30th Street, Philadelphia. *See* Claims Register, #2.

Sometime after April 17, 2017, the City learned that the Plaintiff had died on March 20, 2017. *See* ex. E. It agreed to pay the settlement amount to her administrator, her daughter, Nashiya Pinder. Ex. M. On June 26, 2017, Ms. Pinder executed a general release of the City, and on August 17, 2017, the City paid her counsel the $125,000. Exs. N, O. The release was executed by Ms. Pinder individually, not as a representative of her mother's probate estate, but the court finds that the facts surrounding the release show that the payment was meant for the estate.

On July 19, 2017, the City's bankruptcy counsel reached out to Mrs. Suh's bankruptcy counsel regarding a possible settlement of two matters. Doc. No. 88, pp. 7-8. The City related that it and JBS Renovations, LLC, the entity involved in quiet title litigation with the City and the Suhs in connection with the events that gave rise to Mrs. Suh's contempt action, offered to pay the Suhs $40,000 and the City would release its $125,000 indemnification claim to settle the contempt motion and the quiet title action. *Id.* The City would retain its $9,230 tax claim. The Suhs obviously did not accept the settlement offer, as the contempt motion proceeded to an evidentiary hearing and eventual judgment in Mrs. Suh's favor in the amount of $173,388.

On August 9, 2017, the deadline for filing proofs of claim in this case, the City filed the indemnification claim in the amount of $125,000 at issue here.

## DISCUSSION

### A. The City's claim

Before analyzing the issues presented by the parties, it is helpful to understand the basis of the City's claim. The Plaintiff alleged claims in tort against the City and the Suhs. While the City enjoys sovereign immunity from many types of lawsuits, 42 Pa. C.S.A. § 8541, there are exceptions. 42 Pa. C.S.A. § 8542. Pennsylvania statutory law waives sovereign immunity of local agencies for injuries caused by the negligent acts of the agency or their employees acting within the scope of their office or duties with respect to certain categories of torts, including dangerous conditions of sidewalks within the rights-of-way of streets owned by the local agency. 42 Pa. C.S.A. § 8542(a)(2), (b)(7). To recover against an agency such as the City, a claimant must prove "that the dangerous condition created a reasonably foreseeable risk of the kind of injury [that] was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." 42 Pa. C.S.A. § 8542(b)(7). Regarding several of the exceptions, the Pennsylvania Supreme Court has explained:

This language in sections 8542(b)(4)-(7) and (c) implicitly identifies the negligent acts triggering these four exceptions: where a local agency has notice of (or can reasonably be charged with notice of) a dangerous condition of property it owns (or is in the possession or control of), and where there is a foreseeable risk of the kind of injury that later in fact occurs, the local agency is negligent if it fails to take the necessary remedial measures to protect against the dangerous condition that eventually results in injury and damages. 42 Pa. C.S. § 8542(b)(4)-(7). In determining whether the notice period in advance of the injury was a sufficient amount of time for the local agency to have remediated the dangerous condition, consideration must be given to the equipment, personnel and facilities then available to the local agency as well as the competing demands therefor. 42 Pa. C.S. § 8542(c).

*Metro. Edison Co. v. City of Reading*, 640 Pa. 270, 284 (2017).

Exceptions to immunity are strictly construed. *Walker v. Eleby*, 577 Pa. 104, 110 (2004). Moreover, section 8542(b)(7) further provides that "[w]hen a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable." 42 Pa. C.S.A. § 8542(b)(7).[4] Therefore, if the City were liable to the Plaintiff under this statute, it would only be secondarily liable after the Suhs.

The Plaintiff never proved the elements of section 8542(b)(7) against the City because the City agreed instead to settle the matter for $125,000. Therefore, the City must prove the facts on which its liability depended and the reasonableness of the amount paid before the Suhs can be held liable to it. *Stewart Title Guar. Co. v. Heritage Land Transfer Co.*, 2015 WL 9594377, at *4 (Pa. Super. Ct. Dec. 24, 2015). *See Consol. Rail Corp. v. Youngstown Steel Door Co.*, 695 F. Supp. 1577, 1581 (E.D. Pa. 1988), stating that an agency must prove:

(a) that the settlement was fair and reasonable; (b) that proper notice was given to the party from whom it seeks indemnity; and (c) that the settlement was not voluntary but was made due to the indemnitee's legal liability to satisfy the claim.

*See also Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3rd Cir. 1985); *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 21 (1939) ("To recover indemnity where there has been such a voluntary payment, however, it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim.").

**B. When did the claim arise?**

---

[4] Mrs. Suh argues that the City's acceptance of liability to the Plaintiff equates to an admission of active negligence. However, the City admitted only actual or constructive notice of a sidewalk defect, triggering its secondary liability under section 8542(b)(7).

The court first must determine whether the claim arose prepetition or postpetition, since if postpetition (and not being an administrative expense claim, *see* 11 U.S.C. § 503(a)), it would not be treated in this bankruptcy case. This court then would not need to consider any of the other arguments advanced by the parties here.

Mrs. Suh argues that the claim arose postpetition because, in Pennsylvania, an indemnification claim based on common law accrues only after the party seeking indemnification agrees to pay the third party, which here took place postpetition. The City looks to the Bankruptcy Code's expansive definition of "claim" and argues that it had a contingent, unliquidated and/or unmatured indemnification claim at the time of the prepetition accident.

Mrs. Suh is correct as far as Pennsylvania common law applies. *See e.g., TDY Indus. v. Nat'l Freight Transp., Inc.*, Civil Action No. 07-984, 2009 U.S. Dist. LEXIS 21947 at *35 (W.D. Pa. 2009); *McClure v. Deerland Corp.*, 401 Pa. Super. 226, 232–33 (1991). But that only provides for when the cause of action accrues outside of bankruptcy. The relevant inquiry is when the claim arose for bankruptcy purposes, and that is explained by the Third Circuit Court of Appeals *In re W.R. Grace & Co.*, 729 F.3d 311 (3d Cir. 2013):

> Montana's and the Crown's assertion that a "claim" arises when it fully accrues is based on the now-rejected reasoning of *Avellino & Bienes v. M. Frenville Co. (In re Frenville)*, 744 F.2d 332, 335-36 (3d Cir. 1984), which we explicitly overruled in *In re Grossman's, Inc.*, 607 F.3d 114 (3d Cir. 2010) (en banc) . . . . The law in this Circuit now is that "a claim arises when an individual is exposed pre-confirmation to a product or other conduct giving rise to an injury that underlies a 'right to payment' under the Code." *Wright v. Owens Corning*, 679 F.3d 101, 107 (3d Cir. 2012) (emphasis omitted). **A "claim" can therefore exist "before a right to payment exists under state law."** *Grossman's*, 607 F.3d at 121. Regardless of when Montana and the Crown may have had judgments entered against them, the material fact is that Grace's asbestos-related activities underlie any rights to indemnification and contribution that they can assert.

*In re W.R. Grace & Co.*, 729 F.3d 311, 321-22 (3d Cir. 2013) (emphasis added, footnotes omitted). *See In re Ruitenberg*, 745 F.3d 647, 651 (3d Cir. 2014) ("In other words, a lawsuit based on conduct (or exposure) that occurred before the bankruptcy filing yields a pre-petition claim even though the cause of action did not accrue until the injury manifested sometime after the bankruptcy filing."); *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010) ("our focus should not be on when the claim accrues (with disbursement of Countrywide's own funds), but whether a claim exists"). *See also Wright v. Corning*, 679 F.3d 101, 106 (3d Cir. 2012) (holding that claims arose when parties purchased roof tiles, not when the tiles later proved defective).

*Grossman's* holding is not limited to tort actions. *In re Ruitenberg*, 745 F.3d at 651 (applying to claim for equitable distribution, despite that final judgment of divorce had not yet been entered and even though "there is no obvious prepetition product or specific conduct at issue . . .").

Here, the accident occurred prepetition thus the City's claim against the Suhs arose then regardless that its right to payment from them had not yet accrued under Pennsylvania law. The claim however is contingent on the City proving its liability to the plaintiff and the reasonableness of its settlement amount.

Having found that the claim is a prepetition claim, the court is now obliged to consider the issues of stay violation, estoppel and abstention.

## C. Automatic Stay

Mrs. Suh alleged that the City violated 11 U.S.C. § 362(a)(6), which provides that the filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(6).[5] The actions she cites are that the City (1)(a) entered into a postpetition settlement with Ms. Pinder, and (b) without notice to this court, Mrs. Suh or her counsel; (2) the City entered into this agreement to "(i) advance its indemnification claim against the Debtor; and (ii) strong-arm a settlement of the Contempt Motion for an insultingly small sum of money." Doc. No. 88, ¶ 49; (3) sent the July 19, 2017 email "in a bad faith effort to mislead Debtor's counsel into thinking a settlement had been reached and settlement monies had been paid prepetition, when in fact, that was not the case." *Id.*; (4) filed a proof of claim to mislead debtor's counsel and the court into thinking it had paid the settlement amount already when that was not the case; and (5) paid Ms. Pinder's counsel $125,000.

The court finds no stay violation. First, a co-defendant does not violate the stay by continuing to litigate without a debtor's participation. *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("Furthermore, the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor.").

Next, the court assumes that Mrs. Suh's allegation that the City did not give her prior notice of its settlement as alleging that this was an act to assess a claim against the debtor, since the amount would be the amount the City would assert in indemnification. But the court finds that the City did give Mrs. Suh notice by it April 17, 2017 letter to her state court attorney attaching a release to be signed by the Plaintiff and advising that the City would not be able to pay the settlement amount for 60 to 90 days after the Plaintiff complied with all the City's requirements. The Suhs' attorney was presumably given notice through the notation on the court's docket also.

Though this notice was provided postpetition, the notice did not attempt to extract payment from Mrs. Suh. *Compare In re Wcislak*, 440 B.R. 779, 780 (Bankr. N.D. Ohio 2010) (stating that letter that can be construed as seeking payment on a claim "normally" constitutes a violation of the stay). It merely informed *her attorney* of the liquidation of the City's claim. Communications

---

[5] Had the court found, as Mrs. Suh argued, that the claim arose postpetition, then no stay violation would lie, as section 362(a)(6) only applies to claims that arose prepetition. The court assumes that Mrs. Suh alleges the stay violation as an alternative to her argument that the claim arose postpetition.

to a debtor's attorney do not violate the stay. *In re Last*, 440 B.R. 642, 652 (Bankr. D.N.J. 2010) (no stay violation in sending letter informing debtor's counsel of action taken by the state court and making no demand for payment by the debtor). Mrs. Suh was already aware of the City's indemnification claim against her and her husband, as it had been lodged in the state court back in 2014. Finally, the sending of the notice occurred prior to Mrs. Suh filing her contempt motion against the City, thus it would be unreasonable to argue that the filing of the contempt motion was foreseeable by the City and that it purposely settled the Swint-Pinder case in order to gain an edge over the Suhs.[6]

Mrs. Suh alleges no facts to support that the City settled in order to strong-arm her into settling the Contempt Motion "for an insultingly small sum of money." Moreover, since the settlement offer with Mrs. Suh totaled $165,000 ($40,000 plus elimination of the $125,000 claim) versus the $173,388 this court eventually awarded, the offer cannot be considered insultingly small.[7]

It is not clear to the court why suggesting the $125,000 check had been issued when it had not—an allegation the court does not adopt as fact—or in fact paying the settlement amount, are acts to assess a claim against the debtor. These communications further were made with the debtor's attorney, not the debtor. Once Ms. Pinder had executed the release and complied with the City's other requirements, the City was liable for the payment. As stated above, a co-defendant does not violate the stay by continuing to litigate without a debtor's participation. The City filed its proof of claim against Mrs. Suh on the last day to do so: that timing does not support a deliberate effort to strong-arm the debtor. Finally, as pointed out by Mrs. Suh, she is not liable in the amount of $125,000 without an adjudication that the settlement was reasonable.

## D. Equitable bases to disallow claim

In a supplemental letter brief, Mrs. Suh argues that the City should be judicially estopped from asserting its indemnification claim because it did not assert in her 2011 Bankruptcy Case that it held this claim. She further asserts that confirmation of her chapter 13 plan fixed the amount of the City's claims against the debtor. In another supplemental brief, she extends her legal argument to include equitable estoppel, quasi-estoppel, the doctrine of unclean hands, and/or *in pari delicto*. *See* Doc. No. 88, pp. 18-22.

---

[6] Mrs. Suh did not allege, and probably could not have done so satisfactorily, that the City knew or should have known that she would file the contempt motion against it in this bankruptcy case. Although her attempt to hold the City liable for the wrongful transfer of her property through a lawsuit in the City of Philadelphia had ended with that court dismissing the lawsuit on the finding that the bankruptcy court held exclusive jurisdiction, that occurred in 2014. The instant case was not filed until 2017.

[7] Arguably, Mrs. Suh asked for an insultingly high amount of money in the Contempt Action since she originally asked for "$353,415.02, plus the value of her lost profits from the Development Project and the value of the damage done to her credit rating." Doc. No. 18. This despite the parties later agreeing that the value of the property wrongly transferred was $85,000. *In re Suh*, 17-17221-ABA, 2018 WL 2113092, at *1, *7 (Bankr. D.N.J. May 4, 2018).

As to the estoppel arguments, she asserts that "the City should be estopped from now: (i) asserting a prepetition indemnification claim; and (ii) claiming that it had actual or constructive notice of the alleged defect in the sidewalk." *Id.*, ¶ 65. As briefed by Mrs. Suh, the estoppel doctrines prevent a party from changing positions to derive an unfair advantage or impose an unfair detriment on the opposing party, making a representation that another party rightfully relies on to its detriment, or maintaining a position inconsistent with one in which he or she acquiesced or where he or she accepted a benefit.

While Mrs. Suh characterizes the City's failure to file a proof of claim asserting indemnification as being a misrepresentation that fits one or all of these estoppel theories, she did not identify how she was injured or the City benefitted. Moreover, the court credits the City's explanation that it did not realize until discovery in the lawsuit—that was not filed until October 2013, months after Mrs. Suh's 2011 case had been dismissed—that the Plaintiff held a claim against it and the Suhs. Even had the City known of its claim but purposely did not file a proof of claim, Mrs. Suh's case was dismissed, therefore what claims were or were not asserted is immaterial. Confirmation of the plan did not "fix" the claim, as the plan did not provide for it, Mrs. Suh having not scheduled it, thus it is unknown at what value Mrs. Suh believes it was fixed. In addition, had her case proceeded to discharge, the City's indemnification claim would have been discharged pursuant to 11 U.S.C. § 523(a)(3)(a), since a claim that is neither listed nor scheduled in time to permit timely filing of a proof of claim is not discharged "unless such creditor had notice or actual knowledge of the case in time for such timely filing[.]"[8] Thus the City's knowing failure to file a proof of claim would have harmed *it* rather than Mrs. Suh. Thus, the court will not estop the City from asserting its indemnification claim in this case.[9]

As for unclean hands and/or *in pari delicto*, these doctrines have at their heart the policy that a litigant should not be allowed to benefit from inequitable conduct. *See generally Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. PricewaterhouseCoopers, LLP*, 07-1397, 2008 WL 3895559, at *5 (3d Cir. July 1, 2008) (courts should not hear disputes in which adverse parties are equally at fault); *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). In support, Mrs. Suh repeats the five misrepresentations cited in support of her stay violation allegation.

But as with the automatic stay, none of these allegations support a finding of unclean hands or *in pari delicto*. As already explained, the City had a right to settle with the Plaintiff. It gave notice to Mrs. Suh's counsel on April 17, 2017 that it was considering entering into that settlement. The settlement amount was 95 percent of what Mrs. Suh eventually was awarded by this court. And again, the court does not understand what the issue is with Mrs. Suh's counsel's understanding of whether the money had been paid yet or not as the liability existed regardless. Accordingly, the

---

[8] The exception only applies if the debt is not of a kind specified in 11 U.S.C. § 523(a)(2), (4) or (6), involving false pretenses, a false representation or actual fraud; fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; or a willful and malicious injury by the debtor, which is not contended here.

[9] To grant Mrs. Suh's request that the City be estopped from claiming that it had actual or constructive notice of the alleged defect in the sidewalk would mean that the City was not secondarily liable to the Plaintiff at all (as section 8542 requires that the City be aware of the defect at a sufficient time prior to the event to have taken measures to protect against the dangerous condition). Arguably, this would only change the City's cause of action against the Suhs, but not the Suhs' potential liability.

court will not disallow the claim on the basis of bad faith, unclean hands or *in pari delicto* and does not find the City bound in any manner by confirmation of the plan.

## E. Abstention

Having determined that the City holds a prepetition claim and denying Mrs. Suh's bases for disallowing the claim *in toto* brings the court to whether it should abstain from determining the claim's amount and/or validity.

At the hearing held on the claim objection, the court raised the issue of abstention. Mrs. Suh is in favor of this court permissively abstaining in favor of the Court of Common Pleas, while the City argues that only this court may hear the claim objection. Regarding abstention, section 1334 of title 28 provides:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28. U.S.C. § 157(b)(3).

Initially, the court agrees that only permissive abstention is under consideration, as neither party filed a motion for mandatory abstention (28 U.S.C. § 1334(c)(2)), while permissive abstention (28 U.S.C. § 1334(c)(1)), may be raised *sua sponte*. *Bricker v. Martin*, 265 Fed. Appx. 141, 141 (3d Cir. 2008) (citing *Matter of Gober*, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996)); *In re Vanhook*, 468 B.R. 694, 701 n. 18 (Bankr. D.N.J. 2012). In deciding whether to permissively abstain, New Jersey courts consider either a seven-factor test or a twelve-factor test in "determining when or whether to exercise their discretionary abstention power." *Vanhook*, at 701. The seven-factor test looks at the following issues:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Shalom Torah Centers v. Philadelphia Indem. Ins. Cos.*, No. 10-6766 (FLW), 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011) (granting a motion to abstain). The twelve-factor test considers the following factors, many of which overlap with aspects of the seven-factor test:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Id.* at *4 n. 6. Not all factors need to be considered in all cases and their importance will "vary with the particular circumstances of each case" such that "no one factor is necessarily determinative." *Id.* at *4.

Of the factors that apply in this case, the court holds that permissive abstention is indicated. While this court admittedly could determine the reasonableness of the $125,000 settlement amount vis-à-vis the $110,605 in unpaid medical bills, an initial issue in the indemnification case is whether the City was liable in the first place. Resolution of that issue likely requires comparison to other sidewalk injury cases, something the Court of Common Pleas would be much more familiar with, especially since the sidewalk in question is located in Philadelphia, outside of this court's primary jurisdiction. In addition, as the state court case reached trial-ready status, after discovery litigation conducted by the City and a Motion for Summary Judgment filed by the Suhs, that court is more familiar with the matter. Though claims allowance is a core matter, 28 U.S.C. § 157(b)(2)(B), the subject matter of the claim is solely governed by Pennsylvania law, and the state court judgment there will become the claim here. The debtor wants a jury trial, which was requested in the state court case, but would require consent of the City here, if a jury right even applies. *See* Fed. R. Bankr. P. 9015(b). Finally, Mr. Suh is not a party to the claim objection, but is a co-defendant in the Common Pleas action.[10]

It appears that a mere motion will suffice to reopen the Court of Common Pleas action to allow for adjudication of the indemnification claim. Though a chapter 13 plan has yet to be confirmed, it would have to await resolution of this claim in either court thus delay is unavoidable.

---

[10] The court yet puts less weight on this last factor, since Mr. Suh can be adequately represented by Mrs. Suh, their alleged liability to the City being joint.

But in the meantime, the chapter 13 trustee is holding the $173,388 in funds that should pay all claims in full, whether or not that includes the City's $125,000 claim.[11]

## CONCLUSION

Accordingly, the court finds that the City holds a prepetition claim. It denies Mrs. Suh's equitable grounds for disallowing the claim, and permissively abstains from hearing the claim.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: September 28, 2018

---

[11] Considering that the funds are available, the parties might consent to a conditional confirmation of the plan now, with modification later once the City's claim is finally determined, so that other creditors might be paid and the case moved forward.